IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            )
                                    )
        v.                          )
                                    )   Criminal No. 07-72
GEORGE MORRIS                       )
MILTON JOYNER                       )
ANTHONY MABRY                       )
JAMES RUSS THRIFT                   )


O P I N I O N

DIAMOND, D.J.

On February 28, 2007, a grand jury returned a sixty-three count indictment against nine defendants involved in a cocaine and heroin distribution conspiracy. Defendants Robert Cain, David Michael Irwin and Maurice Thomas have entered guilty pleas and have been sentenced, defendant Trevis Gould has entered a guilty plea and is awaiting sentencing, and defendant Kedryn Chambers has not filed any pretrial motions. The four remaining defendants, George Morris, Milton Joyner, Anthony Mabry and James Russ Thrift, have filed pretrial motions.

Morris has filed the following pretrial motions set forth in one omnibus filing (Document No. 141): (1) motion for discovery, which seeks disclosure of seven categories of information; (2) motion for a bill of particulars; and (3) motion for leave to file

additional pretrial motions. Morris also has requested leave to join in any pretrial motions filed by his co-defendants.

Joyner has filed the following pretrial motions: (1) motion requesting notice pursuant to Rule 404(b) (Document No. 285); (2) motion to compel disclosure of impeachment material and exculpatory evidence (Document No. 286); and (3) motion to retain and provide rough notes (Document No. 287).

Mabry has filed the following pretrial motions: (1) motion to join motions filed by co-defendants (Document No. 217); (2) motion to suppress wire and electronic interceptions (Document No. 218); (3) motion for clarification of Local Criminal Rule 16.1 disclosures (Document No. 220); (4) motion for James hearing (Document No. 221); (5) request for specific Kyles and Brady information (Document No. 223); and (6) motion to produce evidence that the government intends to use under Fed.R.Evid. 404(b) and 609 (Document No. 224).

Thrift has filed the following pretrial motions set forth in one omnibus filing (Document No. 144): (1) motion for discovery, which seeks disclosure of twelve categories of information; (2) motion for a bill of particulars; (3) motion to retain rough notes; (4) motion to disclose and exclude uncharged misconduct evidence; (5) motion for severance; (6) motion for notice of intention to use evidence arguably subject to suppression; (7) motion for early disclosure of Jencks material; (8) motion to

2

preserve evidence; (9) motion to exclude evidence of defendant's prior convictions; (10) motion to suppress wiretap evidence; (11) motion for leave to file additional pretrial motions; and, (12) motion to join and adopt motions filed by co-defendants.

The government filed a consolidated response to the pretrial motions filed by Morris, Joyner, Mabry and Thrift (Document No. 315). In addition, the government has submitted to the court for en camera inspection a number of documents relating to the wiretap that is the subject of the motions to suppress filed by Mabry and Thrift and joined by Morris.

## Motions for Discovery

Morris and Thrift have filed motions for discovery seeking various categories of information, including inter alia requests for exculpatory and impeachment material. Similarly, Joyner has filed a motion to compel disclosure of impeachment material and exculpatory evidence, and Mabry has filed a motion requesting disclosure of Kyles and Brady information.

Generally, governmental disclosure of evidence in criminal cases is governed by Fed.R.Crim.P. 16(a). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1) "with some additional material being discoverable in accordance with statutory pronouncements and the due process

3

clause of the Constitution." <u>United States v. Ramos</u>, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act, 18 U.S.C. §3500, and materials available pursuant to the "<u>Brady</u> doctrine.[1]" <u>Id</u>.

In response to the discovery motions, the government has acknowledged its obligations under Rule 16(a) and the <u>Brady</u> doctrine and indicates that it already has turned over all Rule 16 material and that it intends to comply fully with the dictates of <u>Brady</u> and the Jencks Act at the appropriate time. Accordingly, the defendants' discovery motions and requests for exculpatory evidence will be granted in part, and the government shall turn over all information falling within the purview of Rule 16(a) and the <u>Brady</u> doctrine. To the extent the discovery motions of any of the defendants request information that does not fall within the scope of Rule 16(a), <u>Brady</u> or the Jencks Act, those requests will be denied.

As to the timing of the required disclosures, it is well settled that the government's obligations under <u>Brady</u> require it to disclose actual exculpatory evidence without undue delay. In contrast, <u>Brady</u> impeachment material ordinarily must be disclosed "in time for its effective use at trial." <u>United States v. Higgs</u>, 713 F.2d 39, 44 (3d Cir. 1983). Accordingly, to the extent the government possesses any exculpatory <u>Brady</u> evidence, such evidence

---

[1]<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

4

shall be disclosed to the defendants forthwith.

As to impeachment material, this circuit encourages adherence to the long-standing policy of promoting early production of all types of Brady material "to ensure the effective administration of the criminal justice system." United States v. Starusko, 729 F.2d 256, 261 (3d Cir. 1984) (quoting Higgs, 713 F.2d at 44 n.6). Given the nature of this case, it appears that disclosure of Brady impeachment material no later than ten days prior to trial is sufficient to protect the due process rights of the defendants and to ensure that trial delay is avoided, and an order will be entered to that effect.

## Motion for Bill of Particulars

Morris and Thrift each have filed a motion for a bill of particulars. Defendants generally request specific dates, names and addresses of witnesses, names and address of co-conspirators known to the government but not named in the indictment, specific acts and statements made by defendants, and any acts or statements made by others that may be imputed to them.

The purpose of a bill of particulars is to inform the defendant adequately of the nature of the charges brought against him so as to enable him to prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense. United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989). The granting of a bill of

5

particulars is within the discretion of the district court. United States v. Adams, 759 F.2d 1099, 1113 (3d Cir. 1985).

A bill of particulars, unlike discovery, is not intended to provide a defendant with the fruits of the government's investigation, but is intended to give the defendant only that minimum amount of information necessary to permit him to conduct his own defense. United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985). Here, the indictment provides the particulars of the charged offenses in sufficient detail to place each defendant on notice of that with which he has been charged and to permit him to conduct his own defense. As no proper purpose for a bill of particulars would be served by ordering one, Morris' and Thrift's respective motions will be denied.

## Motion to Require Retention of Rough Notes and Writings

Joyner and Thrift each have filed a motion to require the government to retain all rough notes and writings of its investigating agents which may constitute Brady or Jencks materials. In United States v. Vella, 562 F.2d 275, 276 (3d Cir. 1977), the Third Circuit held that rough interview notes should be preserved so that the court can determine whether they should be made available to the defendant under Brady or the Jencks Act. See also United States v. Ammar, 714 F.2d 238, 259 (3d Cir. 1983) (extending rule to require preservation of drafts of agents'

6

reports). The government has indicated that it is aware of its obligation to retain these materials and will do so to the extent any such items exist. Accordingly, the court will grant defendants' motions to require retention of rough notes and order the government to preserve any such materials.

### Motion to Disclose and Exclude Uncharged Misconduct Evidence

Joyner, Mabry and Thrift each have filed motions to disclose uncharged misconduct evidence which the government intends to offer at trial pursuant to Fed.R.Evid. 404(b).[2] Thrift also has moved to exclude uncharged misconduct evidence.

Rule 404(b) requires the government to provide reasonable notice prior to trial of its intention to use evidence of other crimes, wrongs or acts for the purposes enumerated in the rule. It provides "that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce at trial." According to the commentary to Rule 404(b), other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes reasonable notice will depend on the circumstances of each case. Courts that have

---

[2]Thrift and Mabry also request a pretrial hearing on the admissibility of any potential Rule 404(b) evidence. However, it would be premature to rule on the potential admissibility of Rule 404(b) evidence until such evidence is considered in the context of trial. Accordingly, no pretrial hearing is required.

7

considered what constitutes "reasonable notice" have concluded that notice of intent to use Rule 404(b) evidence seven to ten days prior to trial is sufficient. See United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993) (ten days); United States v. Alex, 791 F.Supp. 723, 728-29 (N.D.Ill. 1992) (seven days); United States v. Williams, 792 F.Supp. 1120, 1133 (S.D.Ind. 1992) (ten days).

In its response to the motions, the government recognizes its obligation under Rule 404(b) to provide reasonable notice in advance of trial of the general nature of any evidence of other crimes, wrongs or acts it intends to introduce at trial and requests ten days prior to trial to provide such notice. The government's request is consistent with the case law discussed above. Accordingly, the court will grant defendants' motions to the extent they seeks advance notice of Rule 404(b) evidence and will enter an order directing the government to provide the required Rule 404(b) notice ten days before trial. To the extent Thrift seeks exclusion of potential Rule 404(b) evidence, his motion will be denied without prejudice as premature.

## Motion for Severance

Thrift has filed a motion for severance of trial from the other co-defendants in this case. The motion will be denied.

Multiple defendants may be joined in a single indictment

8

pursuant to Fed.R.Crim.P. 8(b), which provides:

> The indictment or information may charge 2 or
> more defendants if they are alleged to have
> participated in the same act or transaction,
> or in the same series of acts or
> transactions, constituting an offense or
> offenses. The defendants may be charged in
> one or more counts together or separately.
> All defendants need not be charged in each
> count.

Relief from prejudicial joinder is authorized by
Fed.R.Crim.P. 14(a), which provides:

> If the joinder of offenses or defendants in
> an indictment, an information, or a
> consolidation for trial appears to prejudice
> a defendant or the government, the court may
> order separate trials of counts, sever the
> defendants' trials, or provide any other
> relief that justice requires.

Rule 14 and the jurisprudence developed thereunder reflect "a preference in the federal system for joint trials of defendants who are indicted together, because joint trials promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." United States v. Balter, 91 F.3d 427, 432 (3d Cir. 1996) (quoting Zafiro v. United States, 506 U.S. 534, 537 (1993) (internal citations omitted). "In addition, joint trials of defendants charged under a single conspiracy aid the finder of fact in determining the full extent of the conspiracy and prevent the tactical disadvantage to the government from disclosure of its case." United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir. 1996) (internal quotations and citations

9

omitted). In light of this preference for joint trials, severance under Rule 14 is to be granted "only if there is a serious risk that a joint trial will compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 538-39; see also Balter, 91 F.3d at 432; Voigt, 89 F.3d at 1094.

Rule 14 places the burden of showing prejudice from the joinder on the defendant who seeks severance. United States v. Eufrasio, 935 F.2d 553, 568 (3d Cir. 1991). In that regard, the introduction of evidence more damaging to one defendant than another does not entitle the seemingly less culpable defendant to severance; rather, the inquiry is whether the jury can reasonably be expected to compartmentalize the evidence against each defendant. United States v. McGlory, 968 F.2d 309, 340 (3d Cir. 1992). Similarly, establishing the mere possibility that evidence may be admitted against one defendant which would be inadmissible against another falls short of the required showing because the potential for certain evidence to be admitted against one defendant and not another is a feature common in all joint trials. United States v. Kenny, 462 F.2d 1205, 1218 (3d Cir. 1972).

Here, other than generally asserting that "evidence produced against the other co-defendants could be linked to [him]", see Document No. 144 at 6, ¶15, Thrift has not identified any concrete impediment which would inhibit the jury from compartmentalizing

10

the evidence admitted against each defendant where such a distinction is necessary.[3] As there is no reason to believe that a jury will not be able to compartmentalize the evidence against Thrift from the evidence against the others, Thrift has failed to meet his burden of showing prejudice. Moreover, any danger that the jury might confuse evidence relating to one defendant but not the others can be prevented with a proper instruction that the jury must give separate consideration to the evidence against each defendant. Zafiro, 506 U.S. at 539 (recognizing that limiting instructions often suffice to cure any risk of prejudice). Accordingly, Thrift's motion for severance will be denied.


## Motion For Notice of Evidence Arguably Subject to Suppression

Thrift has filed a motion requesting an order that requires the government to provide notice of its intent to use any evidence "arguably subject to suppression." In response, the government notes that the defendants already have been provided with copies of the conversations intercepted over the wiretap and with any other statements made by them. The government further notes that

---

[3]Thrift also suggests that there is "a possibility that co-defendants will raise conflicting defenses, thus risking taint in the minds of the jury ...." See Document No. 144 at 6, ¶15. Other than this general assertion, Thrift has not demonstrated that his defense is inconsistent with that of his co-defendants. See Zafiro, 506 U.S. at 538 (an allegation of an inconsistent defense does not entitle a defendant to a severance).

11

there was no evidence seized from the defendants which would be subject to suppression, that any identification of the defendants will be by co-conspirators who will testify at trial, and that the government does not intend to introduce any post-arrest statements made by other co-defendants against Thrift. Accordingly, Thrift's motion for notice of evidence arguably subject to suppression will be denied as moot.

## Motion for Early Disclosure of Jencks Material

Thrift has moved for an order compelling the government to disclose Jencks Act material "prior to trial." The Jencks Act, 18 U.S.C. §3500(b), requires the government to disclose prior recorded statements of its witnesses, when related to the subject matter of their testimony, after each witness testifies on direct examination. United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001). According to 18 U.S.C. §3500(a), "no statement or report in the possession of the United States which was made by a government witness or prospective government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."

There is no authority by which this court can order the government to provide Jencks Act statements prior to the time the witness has testified on direct examination at trial. However,

12

the government has indicated that it will provide defendants with Jencks Act material three days prior to trial, and the court will enter an order encouraging the government to do so.

## Motion to Preserve Evidence

Thrift has filed a motion to preserve all evidence related to this case. The government's response indicates that all evidence in this case will be preserved pending the outcome of the trial and any subsequent appeals. Accordingly, Thrift's motion to preserve evidence will be granted.

## Motion to Exclude Evidence of Prior Convictions

Pursuant to Federal Rule of Evidence 609(a), Thrift has filed a motion to exclude evidence of his prior convictions for the purpose of attacking his credibility should he testify at trial.

Rule 609(a)(1) allows, for the purpose of attacking the credibility of an accused, the admission of evidence that the accused has been convicted of any crime punishable by death or imprisonment in excess of one year if the court determines that the probative value of admitting that evidence outweighs the prejudicial effect to the accused. See United States v. Johnson, 388 F.3d 96, 100-01 (3d Cir. 2004). Rule 609(a)(2) further provides that evidence that any witness has been convicted of a crime involving dishonesty or false statement shall be admitted

13

regardless of punishment. The only notice requirement in Rule 609 is that the government is required to provide "sufficient advance written notice" of its intent to use evidence of a conviction more than ten years old.[4]  Fed.R.Evid. 609(b).

The government has indicated in its response that, in the event the defendants testify at trial, the government intends to impeach their respective testimony with any prior criminal convictions that qualify under Rule 609. As a ruling on the admissibility of those prior convictions is not possible at this time, the motion to exclude those prior convictions will be denied without prejudice to an affected defendant's right to challenge the admissibility of any such convictions should he choose to testify at trial.

## Motion to Suppress Wiretap Evidence

Mabry and Thrift, both joined by Morris, each have filed a motion to suppress all evidence obtained through the court authorized electronic surveillance of certain cellular telephones. Defendants have advanced three arguments in support of their motions. First, Mabry contends that the evidence gathered as a

---

[4]Mabry has moved for an order requiring the government to produce any evidence it intends to use against him at trial pursuant to Fed.R.Evid. 609. See Document No. 224. As set forth herein, the only advance notice required by Rule 609 applies where the government intends to use evidence of a conviction more than ten years old. Thus, to the extent Mabry seeks immediate notice of evidence under Rule 609, that request will be denied.

14

result of the electronic surveillance should be suppressed because the request made for the wiretaps lacked probable cause to believe that a crime had been or would be committed that would justify the electronic surveillance. Second, both Mabry and Thrift assert that the government failed to establish the necessity for electronic surveillance. Finally, Thrift argues that the government agents failed to comply with the minimization requirements of the order and as required by statute. For the reasons explained herein, each of these arguments lack merit, and the defendants' motions will be denied.

On March 29, 2005, the government filed an application pursuant to 18 U.S.C. §2518 for authorization to intercept wire communications of Derrick Lyman and others. On that same date, Judge Joy Flowers Conti of this court entered an order at Misc. No. 05-94(a) authorizing the interception of wire communications occurring over cellular telephone number 412-377-8491 subscribed to by Derrick Lyman (Target Telephone #6) and cellular telephone number 248-413-5037 subscribed to in the name of Rita Johnson and known to be used by Lyman (Target Telephone #7), based upon an affidavit of probable cause submitted by Special Agent Gregg Drews of the Drug Enforcement Administration.[5] The subsequent

---

[5]Based upon an affidavit submitted by Agent Drews, Judge Conti entered an order on February 25, 2005, at Misc. No. 05-94 authorizing the interception of wire communications occurring on cellular telephones identified as Target Telephones #1, #2, #3 and #4. Judge Conti subsequently entered the March 29, 2005, order at

15

interception of telephone conversations pursuant to that order included conversations between Lyman and others, which resulted in the charges set forth against Mabry, Thrift and Morris at Counts 1, 7, 8, 26, 31, 32, 37, 38, 42, 50 and 53-56 of the Indictment.

## A. Probable Cause

Mabry contends that the evidence gathered as a result of the electronic surveillance should be suppressed because the request made for the wiretaps lacked probable cause to believe that a crime had been or would be committed that would justify the electronic surveillance. Contrary to Mabry's position, there were more than ample facts alleged in Agent Drews' affidavits to establish probable cause to believe that the Target Telephones were being used in connection with narcotics trafficking.

Pursuant to 18 U.S.C. §§2518(3)(a) and (3)(b), a judge may authorize a wiretap if, inter alia, "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter" and "there is probable cause for belief that

---

Misc. No. 05-94(a) authorizing the interception of wire communications occurring on Target Telephones #6 and #7 based upon a second affidavit by Agent Drews, which incorporated his previous affidavit at Misc. No. 05-94. Both of Agent Drews' affidavits have been provided to the court for en camera review in this matter. According to the government's response, defendants Morris, Mabry and Thrift were intercepted only over Target Telephone #6, but out of caution the government addressed the issues raised by defendants with respect to both Target Telephones #6 and #7. See Government's Response at 2, n.1 & n.2.

16

particular communications concerning that offense will be obtained through such interception." The Fourth Amendment principles regarding probable cause to conduct property searches are applicable to an authorization for a wiretap. United States v. Tehfe, 722 F.2d 1114, 1118 (3d Cir. 1983). Under such principles, probable cause is determined by the totality of the circumstances and requires only that the government demonstrate a probability of criminal activity. Illinois v. Gates, 462 U.S. 213, 235 (1983). The district court will uphold an issuing judge's finding of probable cause if the affidavit upon which it was based provided a substantial basis for finding probable cause. United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001).

Mabry's assertion that the government failed to demonstrate probable cause lacks merit. After reviewing Agent Drews' affidavits, the court concludes that Judge Conti was provided with a substantial basis to conclude that Target Telephone #6 and #7 were being used to further narcotics trafficking and that evidence regarding narcotics trafficking would be discovered. The affidavit explained that Derrick Lyman, Darius Dyer and a number of other individuals were involved in narcotics trafficking, and that Target Telephone #6 and #7 were being used regularly to contact individuals known to be engaged in the drug trade. The affidavit contained information from a cooperating individual that from 2001 to 2004, he/she had purchased more than 50 kilograms of

17

cocaine from Dyer. The affidavit detailed other information describing Dyer's contacts with various sources of cocaine, including Lyman. In sum, the affidavit specified the kinds of criminal conduct discussed or expected to be discussed over Target Telephone #6 and #7, as well as discussions that likely would identify other co-conspirators, and this was supported by specific representations regarding information already known by investigating agents.

Accordingly, the court concludes that the affidavits supporting the wiretap applications provided ample probable cause to believe that a crime had been or would be committed and that particular communications concerning the offense would be obtained through electronic interception. Thus, Mabry's motion to suppress evidence derived from the wiretaps for lack of probable cause will be denied.

B.  Necessity

Both Mabry and Thrift argue that the wiretap evidence should be suppressed because Agent Drews' affidavit failed to contain a full and complete statement as to whether or not other investigative procedures had been tried and failed or why they reasonably appeared to be unlikely to succeed if tried or to be too dangerous, as required by 18 U.S.C. §2518(1)(c). In other words, defendants contend that the government failed to establish that electronic surveillance was necessary to the investigation

18

into the criminal and conspiratorial activity alleged in the indictment.

Before issuing an order authorizing a wiretap, it is required that "the judge determine[ ] on the basis of the facts submitted by the applicant that ... normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. §2518(3)(c). The Third Circuit has emphasized that the statutory requirement of necessity does not mandate that the government exhaust all other investigative procedures before resorting to electronic surveillance. United States v. Williams, 124 F.3d 411, 418 (3d Cir. 1997). Instead, it is sufficient if there is evidence that "normal investigative techniques ... reasonably appear to be unlikely to succeed if tried." Id. (quoting 18 U.S.C. §2518(3)(c)). To make such a showing, "[t]he government need only lay a 'factual predicate' sufficient to inform the [authorizing] judge why other methods of investigation are not sufficient." McGlory, 968 F.2d at 345 (citing United States v. Armocida, 515 F.2d 29, 38 (3d Cir. 1975)). In determining whether this requirement has been satisfied, a court "may properly take into account affirmations which are founded in part upon the experience of specially trained agents." Williams, 124 F.3d at 418 (quoting United States v. Ashley, 876 F.2d 1069, 1072 (1st Cir. 1989)). In this regard, "[t]he government's showing is to be 'tested in a

19

practical and commonsense fashion.'" McGlory, 968 F.2d at 345 (quoting United States v. Vento, 533 F.2d 838, 849 (3d Cir. 1976)).

A review of Agent Drews' affidavit submitted in support of the application relative to Target Telephone #6 and #7 demonstrates conclusively that defendants' necessity argument is without merit. Specifically, the affidavit states the following: (1) that normal investigative procedures, such as procurement of electronic communication records, including subscriber and telephone toll record information and the operation of pen register and trap and trace devices, had been utilized, but that such procedures were unsuccessful in ascertaining the full scope of the narcotics conspiracy under investigation, or in uncovering the identities of all the individuals involved; (2) that visual surveillance was conducted on certain dates but was not entirely successful, noting that on one occasion a target of the investigation became aware of the surveillance; (3) that search warrants would not have been effective because the agents had been unable to identify the location of stash houses that were being used and the confidential source who was cooperating with authorities was unable to determine where drugs were being stored; (4) that information had been obtained through interviews of cooperating individuals and confidential sources, but that there were limits on the information that such sources could obtain

20

because, for example, one of the confidential sources was unable to work his/her way further into the organization; (5) that introducing an undercover officer into the organization was deemed unlikely to succeed because of the reluctance of drug traffickers to introduce new customers to their sources of supply; and (6) that the use of a grand jury was unlikely to further the investigation.

Based on the foregoing, the court is convinced that Agent Drews' affidavit more than established the necessity for the electronic surveillance, that it contained a full and complete statement as to whether or not normal investigative procedures had been tried and had failed or why they reasonably appeared to be unlikely to succeed if tried or to be too dangerous, and that it otherwise complied with the requirements of 18 U.S.C. §2518.

C. Minimization

Thrift's other argument in support of suppression of the wiretap interceptions is that the agents failed to minimize the interceptions and monitoring. This argument likewise is without merit.

According to 18 U.S.C. §2518(5), all intercepts must "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception...." Analyzing whether the government complied with the statute requires courts to evaluate the reasonableness of the actual

21

interceptions in light of the purpose of the wiretap and the totality of the circumstances. Scott v. United States, 436 U.S. 128, 131 (1978); see also United States v. Hull, 456 F.3d 133, 142 (3d Cir. 2006) (the relevant "inquiry is on the 'reasonableness' of minimization efforts, under the totality of the circumstances") (citing Scott, 436 U.S. at 140). "The statute does not forbid the interception of all nonrelevant conversations...." Scott, 436 U.S. at 140. Indeed, "when investigating a wide-ranging conspiracy between parties known for their penchant for secrecy, broader interceptions may be warranted." Hull, 456 F.3d at 142. The mere number of intercepted, but non-pertinent, calls is not dispositive of a minimization inquiry. Adams, 759 F.2d at 1115.

The Third Circuit has identified three factors that must be considered when reviewing a defendant's allegation that the government violated the minimization requirement. See Armocida, 515 F.2d at 44. First, courts must consider the nature and the scope of the criminal enterprise that is under investigation. Id. In this regard, "where the criminal enterprise under investigation is a large-scale conspiracy, it may be necessary for the government to intercept more conversations than where the investigation is of a more limited criminal undertaking." Id. Relevant to the wiretaps at issue in the instant case, the Third Circuit noted that more broad interception may be "especially [necessary] where ... the judicially approved wiretap is designed

22

to identify other participants in the conspiracy and to determine the scope of the conspiracy." Id. Second, courts must consider the "government's reasonable expectation as to the character of, and the parties to, the conversations." Id. Where the government knows the identities of the persons suspected of criminal activity whose conversations are to be targeted, or has knowledge regarding the time that criminal activity is expected to be discussed, investigators may tailor their intercepts accordingly. Id. Finally, courts must consider the degree of supervision exercised by the authorizing judge. Id. The Third Circuit noted that 18 U.S.C. §2518(6) allows the authorizing judge to require that the government make regular reports so that the judge can supervise the interception process. Id.

In this case, the government has submitted for the court's en camera review two ten-day reports which detail what progress had been made towards achieving the authorized objective of the wiretap and the need for continued interceptions, as well as the efforts that were made by the investigating agents to minimize the interception of non-pertinent communications. The reports further specify the total number of intercepted calls, the number of calls flagged as pertinent, the number of calls over two minutes in duration and the number of minimized calls. After reviewing these reports, the court is more than satisfied that the agents made reasonable efforts to minimize as required by statute and in

23

accordance with the order authorizing the wiretap. For this reason, as well as those stated above, defendants' motions to suppress wiretap evidence will be denied.

### Motion for Leave to File Additional Pretrial Motions

Morris and Thrift request that the court enter an order permitting them to file additional pretrial motions as may become necessary. The court will grant defendants' request to the extent that they may file additional motions which reasonably could not have been anticipated within the time allocated for filing motions in this case.

### Motion to Join and Adopt Co-Defendants' Motions

Both Mabry and Thrift have filed motions for leave to join and adopt the motions filed by their co-defendants. Morris also has made a similar request in his omnibus pretrial motion. See Document No. 141, ¶10. These motions will be granted.

### Motion for a Pre-trial James Hearing

Mabry has moved for a pretrial hearing pursuant to United States v. James, 590 F.2d 575 (5th Cir. 1979), to determine the admissibility of statements of alleged co-conspirators under the exception to the hearsay rule set forth in Fed.R.Evid.

24

801(d)(2)(E).[6]

The government suggests that a pretrial determination as to the admissibility of co-conspirator statements is neither practical nor necessary in this case. Instead, the court should look to the trial testimony as a whole in determining whether there was a conspiracy, whether Mabry and the declarant were members of that conspiracy and whether the statements were made during and in furtherance of the conspiracy.

In this circuit, there is no authority for holding a separate hearing on the admissibility of co-conspirator statements. See United States v. Ammar, 714 F.2d 238, 246-47 (3d Cir. 1983). In addition, "the control of the order of proof at trial is a matter committed to the discretion of the trial judge," United States v. Continental Group, Inc., 603 F.2d 444, 456 (3d Cir. 1979), and it is well settled that a Rule 104 hearing need not be conducted in every case where the government seeks to introduce a co-conspirator's statements against a defendant. Ammar, 714 F.2d at 247. Because the court finds no authority for a mandatory pretrial hearing on the admissibility of co-conspirator

---

[6] Pursuant to Rule 801(d)(2)(E), "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), the government must establish by a preponderance of the evidence: (1) that there was a conspiracy involving the declarant and the non-offering party; and (2) that the statement was made during and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987).

25

statements, and the tendency is to yield to the trial court's discretion as to the order of proof at trial, Mabry's motion for a pretrial James hearing will be denied.

## Motion for Clarification of Local Criminal Rule 16.1 Disclosures

Mabry has filed a motion requesting that the government be ordered to identify the specific telephone calls it intends to introduce at trial as evidence against him. According to Mabry, the government has "technically complied with the requirement of Local Criminal Rule 16.1 by providing [him] with compact disks purportedly containing telephone conversations supporting the government's allegation that [he] was a member of a drug distribution conspiracy." However, Mabry believes the government should be required to identify the specific telephone calls it will rely upon as evidence of his role in the conspiracy.

The government's response indicates that the calls involving Mabry were identified "in the telephone Counts of the Indictment," referring to Counts 2 through 63, which charged various defendants with using a communication facility in committing the crime of conspiracy, in violation of 21 U.S.C. §§843(b) and (d). Counts 26, 32, 37 and 38 of the indictment set forth the date and time of calls allegedly involving Mabry.

Based on Mabry's acknowledgment that the government has complied with the requirements of Local Criminal Rule 16.1, as

26

well as the fact that the indictment identifies the calls allegedly involving him, the court will deny Mabry's motion to require the government to identify the specific telephone calls it intends to introduce at trial as evidence against him.

An appropriate order will follow.

Gustave Diamond
United States District Judge

Date: September 9, 2008

cc: Constance M. Bowden
    Assistant U.S. Attorney

    Ernest H. Sharif, Esq.
    157 Villa Drive
    Pittsburgh, PA 15214

    Charles J. Porter, Esq.
    1715 Gulf Tower
    Pittsburgh, PA 15219

    Paul D. Boas, Esq.
    Law & Finance Building
    Fifth Floor
    429 Fourth Avenue
    Pittsburgh, PA 15219

    James A. Wymard, Esq.
    220 Grant Street
    Pittsburgh, PA 15219

27